UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JODI A. GARON,

      Plaintiff,

v.                               Case No:   2:13-cv-684-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on September 24, 2013.   Plaintiff, Jodi A. Garon seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

**I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

**A.   Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.   The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.  Procedural History

On March 9, 2010, Plaintiff filed an application for disability insurance benefits and supplemental security income asserting a disability onset date of February 20, 2010. (Tr. p. 142-148). Plaintiff's applications were denied initially on July 29, 2010, and on reconsideration on October 29, 2010. (Tr. p. 75-78). A hearing was held before Administrative Law Judge John D. McNamee-Alemany ("ALJ") on January 31, 2012. (Tr. p. 43-66). The ALJ issued an unfavorable decision on March 2, 2012. (Tr. p. 23-36). On July 29, 2013, the Appeals Council denied Plaintiff's request for review, but did consider additional information provided to the Appeals Council. (Tr. p. 1-9). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on September 24, 2013. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See, Doc. 24).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through September 30, 2015. (Tr. p. 25). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 20, 2010, the alleged onset date. (Tr. p. 25).   At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: affective disorder (major depressive disorder), alcohol dependence, obesity, and migraines citing 20 C.F.R. § 404.1520(c) and 416.920(c). (Tr. p. 25).   At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 28).   At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except:

> she cannot tolerate high production stress, so no jobs that require high quotas; standing and/or walking is limited to 15 minutes at a time and a total of 3 hours in and 8-hour day; sitting is limited to 6 hours in an 8-hour day; in addition to normal breaks, she must be allowed to stand for about one minute every 30 minutes without leaving the workstation; she is limited to occasionally climbing ramps and stairs, balancing, kneeling, stooping and crouching; she can never crawl; she must avoid concentrated exposure to vibration, dangerous moving machinery, and extreme heat; and she cannot work in unprotected heights.

(Tr. p. 30).

The ALJ determined that Plaintiff could not return to her past relevant work as a stocker. (Tr. p. 35).   The ALJ found that Plaintiff was born on September 7, 1971, and was 38 years old which is considered a younger individual at the time of her alleged onset of disability.   (Tr. p. 35). Plaintiff had at least a high school education, and the transferability of job skills was not material in the determination.   (Tr. p. 35).   The ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   (Tr. p. 35). The ALJ determined that Plaintiff was able to perform the following jobs:   general clerical worker (DOT [2] 205.367-014); information clerk (DOT 237.367-046); and surveillance system monitors (DOT 379.367-010). (Tr. p. 36).   The ALJ concluded that Plaintiff was not under a disability from February 20, 2010 through the date of the decision. (Tr. p. 36).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

---

[2] DOT refers to the Dictionary of Occupational Titles.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises three issues on appeal.   As stated by Plaintiff they are:

(1)  The Appeals Council committed reversible error in failing to remand this matter to the ALJ for consideration of the newly submitted evidence.

(2)  Given the new evidence submitted to the Appeals Council confirming the diagnosis of multiple sclerosis ("MS"), this Court should remand this case with instructions to obtain a medical opinion regarding whether Ms. Garon's MS meets or equals the requirements of Listing 11.09.

(3) The ALJ's reasons for rejecting the opinion of Dr. Rubin, Ms. Garon's treating physician, are insufficient as a matter of law.

## A.   Whether the Appeals Council Erred

Plaintiff asserts that the Appeals Council erred in failing to consider new, material, and chronologically relevant evidence concerning Plaintiff's Multiple Sclerosis ("MS"). The Commissioner asserts that the record supports the ALJ's decision and the additional medical

evidence, even if chronologically relevant, does not undermine the substantial evidence supporting the ALJ's decision, and a confirmation of a diagnosis does not determine disability.

The Appeals counsel received the following additional evidence and made the following determination:

> We also looked at MRI reports from Rose Radiology dated March 30, 2012, and the medical record form Dr. DiTrapani-Stephenson dated May 18, 2012. The Administrative Law Judge decided your case through March 2, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 2, 2012.
>
> If you want us to consider whether you were disabled after March 2, 2012, you need to apply again.

(Tr. p. 2). The Appeals counsel denied Plaintiff's request for review and found that the additional information "does not provide a basis for changing the Administrative law Judge's decision." (Tr. p. 1, 2). One rule that the Appeals Council applied stated that if it received "new and material evidence and the decision is contrary to the weight of all the evidence now in the record" then it would have granted review. (Tr. p. 1).

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. §404.900(b). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§404.970(b), 416.1470(b)). New evidence is considered material and thereby warranting a

remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

The ALJ's Decision was dated March 2, 2012.   On March 30, 2012, Plaintiff submitted to an MRI of the brain with and without contrast. (Tr. p. 235), which was less than a month after the Decision. The Impression was "[m]ultiple periventricular and deep white matter foci of signal change.   The findings would be compatible with demyelinization/MS."   (Tr. p. 235).

On May 18, 2012, less than three months after the Decision, Plaintiff saw Tonya DiTrapani-Stephenson, M.D. for a consultation concerning abnormal imaging and possible MS. (Tr. p. 233). Plaintiff complained of pain, headaches, and abnormal movements.   (Tr. p. 233). Plaintiff had severe neck pain which radiated to both upper extremities, and an increase in urination, low back pain, episodes of spasms in left upper extremity, dropping objects, slight balance problems, headaches, and visual problems.   (Tr. p. 233). Dr. DiTrapani-Stephenson noted a history of significant abnormal imaging.   (Tr. p. 233). Dr. DiTrapani-Stephenson reviewed the MRI of the brain done on March 30, 2012 showing multiple white matter lesions with no obvious enhancement.   (Tr. p. 233). Dr. DiTrapani-Stephenson also noted a "cystic" lesion in the left basal ganglia.   (Tr. p. 233). Comparing past MRIs, Dr. DiTrapani-Stephenson noted that the past MRIs showed a few white matter lesions, but now Plaintiff has had a progression of lesions. (Tr. p. 233). Dr. DiTrapani-Stephenson diagnosed Plaintiff with relapsing remitting MS.   (Tr. p. 234).   Dr. DiTrapani-Stephenson found the MRIs to show the progression of Plaintiff's disease, and the doctor suspected that Plaintiff's current symptoms were related to a cervical lesion, even though it did not appear on the March 2012 MRI, but she suspected it would appear if the MRI imaging were repeated.   (Tr. p. 234). Dr. DiTrapani-Stephenson related some of Plaintiff's symptoms including incontinence and multiple muscle spasms directly to her MS. (Tr. p. 234).   Dr.

DiTrapani-Stephenson prescribed large doses of methylprednisolone, which she would have preferred to give by IV, however, Plaintiff could not afford it, so the doctor prescribed them by mouth, and also gave her a prescription for medication for headaches. (Tr. p. 234). Dr. DiTrapani-Stephenson gave Plaintiff information on long-term medication for MS, and was hoping to have Plaintiff start this medication within a few weeks. (Tr. p. 234). Dr. DiTrapani-Stephenson noted that Plaintiff was disabled due to her illness. (Tr. p. 234).

Plaintiff's possible diagnosis of MS was noted on July 1, 2009, when she visited Enrique A. Wulff, M.D. who made a diagnostic impression of "[p]ossible central nervous system demyelinating disease" and noted the presence "in the MRI of the brain of bilateral periventricular white matter small, tiny abnormal signal as well as similar type of white matter abnormalities in the left temporal lobe and in the right middle cerebellar peduncle." (Tr. p. 395). Dr. Wulff discussed the possibility that Plaintiff was suffering from a central nervous system demyelinating disease such as Multiple Sclerosis. (Tr. p. 395). On February 16, 2010, Plaintiff visited Dr. Wulff who determined that the "findings in the MRI of the brain and the pattern of intermittent, remittent neurological symptomatology suggest strongly the diagnosis of multiple sclerosis." (Tr. p. 393).

The ALJ acknowledged that in June 2009, Plaintiff was diagnosed with possible MS, but was taking no medication for MS. (Tr. p. 27). The ALJ found that the MRI showed that Plaintiff's symptoms supported a possible diagnosis of multiple sclerosis, however the MRI indicated only a possibility of MS. (Tr. p. 27). The ALJ noted that "[n]o additional objective medical testing confirmed this condition. Physicians did not prescribe medications for multiple sclerosis. In addition, no objective medical imaging confirmed the cause of the claimant's neck pain. Moreover, a medically determinable impairment may not be established solely on the basis of a claimant's allegations regarding symptoms [citations omitted]." (Tr. p. 27-28). The ALJ found

that Plaintiff's allegations of multiple sclerosis was not a medically determinable impairment, and was not a severe impairment.   (Tr. p. 33).

The Appeals Council considered the additional records of the MRI reports from Rose Radiology dated March 30, 2012, and the medical record from Dr. DiTrapani-Stephenson dated May 18, 2012. (Tr. p. 2).   The Appeals Council determined that the "Administrative Law Judge decided your case through March 2, 2012. This new information is about a later time.   Therefore, it does not affect the decision about whether you were disabled beginning on or before March 2, 2012.   If you want us to consider whether you were disabled after March 2, 2012, you need to apply again." (Tr. p. 2).

Plaintiff received a possible diagnosis of MS in 2009.   Her MRI indicated that she had white matter abnormalities and her brain had a pattern of intermittent, remittent neurological symptomatology which according to Dr. Wulff strongly suggested a diagnosis of MS.   In the Decision of March 2, 2012, the ALJ noted that Plaintiff was not affirmatively diagnosed with MS, but only with possible MS. The ALJ asserted that Plaintiff lacked objective medical testing to confirm her condition, had no medication prescribed for MS by a physician, and concluded that Plaintiff's allegations of MS did not constitute a severe impairment.

Less than a month after this Decision, Plaintiff obtained an MRI on March 30, 2012, which showed "[m]ultiple periventricular and deep white matter foci of signal change. The findings would be compatible with demyelinization/MS."   (Tr. p. 235). Less than two months after the MRI, Plaintiff saw Dr. DiTrapani-Stephenson who compared the past MRIs with the most recent MRI and noted a progression of lesions and diagnosed Plaintiff with relapsing remitting MS. Dr. DiTrapani-Stephenson attributed some of Plaintiff's complaints to MS. Dr. DiTrapani prescribed

medication for Plaintiff and was in the process of determining the best MS medication for Plaintiff to take.

The new objective medical evidence of the MRI of March 30, 2012 and the report of Dr. DiTrapani-Stephenson relate to the possible diagnosis of MS in 2009.  Plaintiff's disease had clearly progressed since 2009, and the progression did not simply occur from March 2, 2012, the date of the ALJ's decision until March 30, 2012, the date of the MRI. Therefore, the medical evidence of the MRI dated March 30, 2012 and Dr. DiTrapani-Stephenson's records relate to the period of time on or before the ALJ's decision.

The Commissioner cites to *Leiter v. Comm'r of Soc. Sec.*, 377 F. App'x 944, 950 (11th Cir. May 6, 2010) for the proposition that "[e]vidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit in a new application, but it is not probative of whether a person was disabled during the specific period under review." (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999)).  In *Leiter*, the doctor's report was completed two years after a diagnosis which observed that Plaintiff's condition worsened, and there was no indication that the doctor's report related to the time on or before the ALJ's hearing or decision.  Whereas in the instant case, the new MRI was completed less than a month after the ALJ's Decision.

The ALJ noted that Plaintiff had not been affirmatively diagnosed with MS, but now Dr. DiTrapani-Stephenson had diagnosed her with the disease. The ALJ asserted that no objective medical evidence supported Plaintiff's allegations, and Dr. DiTrapani-Stephenson found Plaintiff's MRI did support her allegations.  The ALJ noted that no physician had prescribed Plaintiff with MS medication, and Dr. DiTrapani-Stephenson had discussed the various MS medication with Plaintiff and was hoping to have Plaintiff taking them within a few weeks of her visit.   The ALJ specifically noted that a firm diagnosis, objective medical testing, and prescription

for MS were missing from the record, and the new MRI and Dr. DiTrapani-Stephenson's records provide this missing information.   The Appeals Council evidently did not go to the effort of adequately reviewing the ALJ's Decision and then reviewing the new medical evidence which responded to the concerns voiced by the ALJ in his Decision.   Therefore, the Appeals Council erred.

### II. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments, which focus on whether Plaintiff meets Listing 11.09, and whether the ALJ properly rejected the opinion of Dr. Rubin are inextricably intertwined with the issue to be reconsidered by the Commissioner on remand.   Because the Court finds that on remand, the ALJ must evaluate the new evidence in light of all of the evidence of record, the disposition of these remaining arguments would, at this time, be premature.

### III. Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds that the decisions of the ALJ and the Appeals Council are not supported by substantial evidence.

### IT IS HEREBY ORDERED:

(1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider the MRI dated March 30, 2012, to consider Dr. DiTrapani-Stephenson's records, to reconsider whether Plaintiff meets Listing 11.09, and to reconsider the opinion of Dr. Rubin, all in conjunction with the other medical evidence of record.

(2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

(3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending

motions and deadlines, and close the file.


**DONE** and **ORDERED** in Fort Myers, Florida on March 12, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties